## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------

MILEYDIE QUILES                              :
3027 Guineveres Drive, Apt. B2               :
Harrisburg, PA 17110                         :          Civil Action No.: _____
                                             :
                          Plaintiff,         :
                                             :          **JURY TRIAL DEMANDED**
          v.                                 :
                                             :
EXEL, INC., d/b/a DHL SUPPLY                  :
CHAIN                                         :
360 Westar Boulevard                         :
Westerville, OH 43082                        :
                                             :
                                             :
                          Defendant.         :

-------------------------------------------------

## COMPLAINT – CIVIL ACTION

Plaintiff, Mileydie Quiles ("Plaintiff"), by and through her undersigned counsel, for her Complaint against Exel, Inc., d/b/a DHL Supply Chain ("Defendant") alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action to redress violations by Defendant of Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

1

2.    Specifically, Plaintiff contends that Defendant discriminated against her because of her pregnancy by denying her request for reasonable accommodations, which ultimately led to her constructive discharge.

3.    As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

4.    Plaintiff, Mileydie Quiles, is a citizen of the United States and Pennsylvania, where she currently maintains an address at 3027 Guineveres Drive, Apt. B2, Harrisburg, PA 17110.

5.    Defendant, Exel, Inc., d/b/a DHL Supply Chain, is a for-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business located at 360 Westar Boulevard, Westerville, OH 43082.

## JURISDICTION AND VENUE

6.    Paragraphs 1 through 5 are hereby incorporated by reference as though the same were fully set forth at length herein.

7.    On or about February 23, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (c), and 43 P.S. § 959(a).  Plaintiff's EEOC Charges were docketed as

EEOC Charge No. 530-2024-04261. Plaintiff's EEOC Charge was dual filed within one hundred and eighty (180) days of the unlawful employment practice.

8.      By correspondence dated June 13, 2024, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising Plaintiff that she had ninety (90) days to file suit against Defendant.

9.      Plaintiff filed the instant action within the statutory time frame applicable to her federal claims.

10.      Although one (1) year has not yet passed since Plaintiff dual filed her Charge with the EEOC and the PHRC, courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one (1) year deadline expires during the court proceedings. O'Malley v. Dowd Marketing, Inc., No. 17-cv-1419, 2018 WL 6313616, at *10-11 (M.D. Pa. Nov. 15, 2018) (citations omitted).

11.      Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

12.      This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 2000e, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.

13.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

15.    The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania in this judicial district.

## FACTUAL BACKGROUND

16.    Paragraphs 1 through 15 are hereby incorporated by reference as though the same were fully set forth at length herein.

17.    On or about June 12, 2023, Plaintiff began her employment at Defendant's location at 2771 N. Market Steet, Elizabethtown, Pennsylvania 17022 in the position of Picker/Packer.

18.    Plaintiff had previously worked at Defendant's Carlisle, Pennsylvania location from on or about October 20, 2020 through on or about March 28, 2023.

19.    Plaintiff's resignation from Defendant's Carlisle, Pennsylvania site was due to Defendant's refusal to allow a shift change request as necessitated by Plaintiff's childcare responsibilities.

20.    As a Picker/Packer at Defendant's Elizabethtown, Pennsylvania location, Plaintiff was required to work four (4) days a week, ten (10) hours a day.

21.    Plaintiff's shifts were from 6:00 AM to 4:00 PM, with scheduled breaks.

22.    On or about June 6, 2023, Plaintiff notified Defendant's HR Director, Mandy Spigle ("Ms. Spigle"), of Plaintiff's pregnancy.

23.    Plaintiff expressed concern about upcoming appointments and their potential impact on her work schedule.

24.    Ms. Spigle assured Plaintiff that her appointments would be excused and would not affect her employment.

25.    Plaintiff's due date was approximately February 19, 2024.

26.    On or about June 27, 2023, Plaintiff experienced a large amount of pregnancy-related vaginal bleeding while working after being reassigned to the "shelving" area.

27.    The "shelving" area involved frequent bending to build pallets.

28.    On or about June 27, 2023, while performing one of these tasks in the shelving area, Plaintiff experienced intense vaginal bleeding and pain.

29.    The vaginal bleeding prompted Plaintiff to seek emergency medical care.

30.    That same day, Plaintiff was treated and released from the UPMC Harrisburg Emergency Department.

31.     On or about July 17, 2023, Plaintiff followed up with UPMC Obstetrics & Gynecology regarding her pregnancy-related complications.

32.     Plaintiff provided a note to Ms. Spigle from Iulia Houck, CRNP, which outlined some necessary accommodations due to Plaintiff's pregnancy.

33.     The accommodations included not lifting more than thirty (30) pounds, limited standing/walking, additional rest, restroom, and snack breaks as needed, the ability to wear comfortable shoes, and the ability to attend prenatal doctor appointments.

34.     These accommodations were to ensure Plaintiff's health and also the wellbeing of her unborn child.

35.     On that same day, in addition to submitting the doctor's note to Ms. Spigle, Plaintiff also requested that her supervisors be informed of her pregnancy and her needed accommodations.

36.     Ms. Spigle assured Plaintiff via email that Ms. Spigle would speak "together as a group" with Plaintiff's supervisors regarding Plaintiff's work assignments.

37.     Despite Ms. Spigle's assurances, there was no follow-up communication from Plaintiff's supervisors, and her accommodations were ultimately not implemented.

38.    On or about August 30, 2023, Josh LNU ("Last Name Unknown"), Defendant's Packer Lead, gave Plaintiff a stool for her to sit on at her workstation.

39.    However, the stool was subsequently taken away by Shane (Last Name Unknown) ("Shane LNU"), one of Defendant's Supervisors, and Robert (Last Name Unknown) ("Robert LNU"), another of Defendant's Supervisors, because of complaints from other employees that Plaintiff was allowed to sit as needed.

40.    Around this same time, Plaintiff was warned by Shane LNU against complaining about the lack of accommodations for Plaintiff's pregnancy.

41.    Additionally, Robert LNU also advised Plaintiff against complaining, despite the fact that she had not been given her needed accommodations for her pregnancy.

42.    Shane LNU and Robert LNU both threatened to move Plaintiff to an area known as the "cage."

43.    By way of background, the cage is a restricted area which, due to Plaintiff's condition, she could not leave without assistance.

44.    The cage severely limited Plaintiff's access to the restroom and the ability to take necessary breaks, as employees are not permitted to leave this area at any time without a replacement.

45.    On or about August 31, 2023, Shane LNU assigned Plaintiff to the cage area and then got upset when Plaintiff needed to leave to use the restroom.

46. Being confined to this area greatly affected Plaintiff's health, due to its restricted access, and Plaintiff asked to be moved out of the cage.

47. Defendant's Operations Manager, Brandon (Last Name Unknown) ("Brandon LNU"), suggested that Plaintiff consider taking Family and Medical Leave Act ("FMLA"), short term disability ("STD"), or long term disability ("LTD") leave instead of providing any reasonable accommodation such that Plaintiff could continue to work.

48. On or about September 1, 2023, Plaintiff was again assigned to Defendant's "in-bound" department where freight is received.

49. At times, Plaintiff was forced to lift boxes above what Plaintiff was safely able to do per her restrictions and perform other tasks not in conformity with these lifting restrictions.

50. On or about September 6, 2023, Josh LNU provided Plaintiff with a better stool.

51. The following day, Robert LNU interrogated Plaintiff about the stool.

52. On or about September 6, 2023, Plaintiff was moved to the warehouse, where she continued to do the job of a Picker/Packer.

53. Plaintiff was given the ability to sit down; however, the job in the warehouse was very challenging to do while sitting, and Defendant still did not accommodate Plaintiff restrictions while Plaintiff worked in the warehouse.

8

54. Plaintiff was instead rotated to different spots almost daily, which also did not comply with Plaintiff's restrictions and instead only exacerbated her pregnancy-related medical complications.

55. On or about September 13, 2023, Plaintiff went to the emergency room due to pregnancy-related medical complications.

56. Plaintiff submitted a note from Valda Crowder, MD ("Dr. Crowder"), UPMC Emergency Department, to Ms. Spigle excusing her from work until September 15, 2023.

57. On or about September 14, 2023, Plaintiff had a prenatal appointment with Hanford Nlovu, MD ("Dr. Nlovu"), UPMC Obstetrics & Gynecology.

58. On or about September 15, 2023, Ms. Spigle responded by email to Plaintiff and stated that the doctor's note would not be accepted for absences according to Defendant's policy.

59. On or about September 19, 2023, due to Plaintiff's requests for a reasonable accommodation being consistently ignored or inadequately addressed, Plaintiff submitted a voluntary resignation form to Defendant as Plaintiff was scared for her health and that of her unborn child.

60. Plaintiff resigned, citing Defendant's repeated refusal to accommodate her pregnancy despite submission of her doctors' notes.

61.    For these reasons, Plaintiff alleges that Defendant discriminated against Plaintiff for her pregnancy, failed to accommodate her for such pregnancy, and retaliated against her for asking for said accommodations, which led to her constructive discharge, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**29 U.S.C. § 2000e, *et seq.***
**PREGNANCY DISCRIMINATION**

62.    Paragraphs 1 through 61 are hereby incorporated by reference as though the same were fully set forth at length herein.

63.    Defendant had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the then-current or preceding calendar years applicable to Plaintiff's claims.

64.    Defendant is therefore an "employer" as defined and covered by Title VII.

65.    At all times material hereto, Plaintiff was an "employee" of Defendant as defined by Title VII.

66.    Defendant refused to accommodate Plaintiff because of her pregnancy.

67.    Defendant discriminated against Plaintiff because of her pregnancy in violation of Title VII.

10

68.    Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

69.    As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including but not limited to:

A.    Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

B.    Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for their intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.    Pre-judgment interest in an appropriate amount;

E.    Such other and further relief as is just and equitable under the circumstances; and,

F.    Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT II**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**29 U.S.C. § 2000e, *et seq.***
**<u>RETALIATION</u>**

70.    Paragraphs 1 through 69 are hereby incorporated by reference as though the same were fully set forth at length herein.

71.    Defendant retaliated against Plaintiff for her good faith requests for reasonable accommodations for her pregnancy, in violation of Title VII.

72.    Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

73.    As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including but not limited to:

A.    Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

B.    Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.    Pre-judgment interest in an appropriate amount;

E.    Such other and further relief as is just and equitable under the circumstances; and,

F.    Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT III
## PENNSYLVANIA HUMAN RELATIONS ACT
### 43 P.S. § 951, *et seq.*
### PREGNANCY DISCRIMINATION

74.    Paragraphs 1 through 73 are hereby incorporated by reference as though the same were fully set forth at length herein.

75.    Defendant had four (4) or more employees at all times applicable to Plaintiff's claims.

13

76. Defendant is therefore an "employer" as defined and covered by the PHRA.

77. At all times relevant hereto, Plaintiff was an "employee" of Defendant within the meaning of the PHRA.

78. Defendant refused to accommodate Plaintiff because of her pregnancy.

79. Defendant discriminated against Plaintiff because of her pregnancy in violation of the PHRA.

80. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

81. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

14

B.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

C.    Pre-judgment interest in an appropriate amount;

D.    Such other and further relief as is just and equitable under the circumstances; and,

E.    Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT IV
## PENNSYLVANIA HUMAN RELATIONS ACT
### 43 P.S. § 951, *et seq.*
### RETALIATION

82.    Paragraphs 1 through 81 are hereby incorporated by reference as though the same were fully set forth at length herein.

83.    Defendant retaliated against Plaintiff for her good faith requests for reasonable accommodations for her pregnancy, in violation of the PHRA.

84.    Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

85.    As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, and emotional pain and suffering.

15

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, lost benefits, and compensatory damages in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000);

B.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

C.    Pre-judgment interest in an appropriate amount;

D.    Such other and further relief as is just and equitable under the circumstances; and,

E.    Any verdict in favor of Plaintiff be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

86.    Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MARZZACCO NIVEN & ASSOCIATES**

By:  /s/ *Benjamin Salvina*
Benjamin Salvina, Esq.
945 East Park Drive, Suite 103
Harrisburg, PA 17111
TEL: 717-231-1640
FAX: 717-231-1650
bsalvina@klnivenlaw.com
*Attorney for Plaintiff*

Dated: September 11, 2024

17

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, emails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.